THOMAS BLACK and JOHN BLACK *against* JOHN J. ELY.

ON CERTIORARI.

Where the plaintiffs, having a mortgage on lands of defendant for the sum of $4,000, obtain judgment on their bond, and execution is placed in the hands of the sheriff, if the sheriff by virtue of this execution, levies on the mortgaged premises, but is prevented from advertising them by a letter from the plaintiffs, and these premises are afterwards sold by virtue of prior executions, and are purchased by the plaintiffs for six cents an acre more than the amount of their mortgage, the sheriff is not entitled to centage on the whole amount of the $4,000, but only upon the amount which the property brought over and above the amount of the mortgage.

This action was originally commenced before a justice of the peace, and was brought by John J. Ely, late sheriff of the county of Monmouth, against Thomas Black and John Black, " to recover $93.84, for his centage, or sheriff's fees, on $4,691, being the amount of, principal and interest, due upon a certain execution issued at the suit of said Thomas Black and John Black against Thomas Cook, and put into the hands of said Ely to be executed." A judgment was rendered, by the justice, in favor of Ely, the sheriff, for $93.84, and the Blacks then appealed to the Court of Common Pleas.

On the trial of the cause before the Common Pleas, " the appellee, in support of his action, read in evidence a judgment and execution returnable to October term, 1817, in favor of J. K. Van Mater against Thomas Cook, for debt, $470, and costs of suit. Also, a judgment of the appellants against the said Thomas Cook, and an execution issued thereon, returnable to the term of July, 1819, directing the sheriff to levy $4,000, with interest from April 1, 1817, and costs $5.78. Also, a mortgage from Thomas Cook to appellants, to secure the payment of the said sum, dated April 1, 1817. It further appeared, that one William Hampton had

a mortgage upon the said premises, prior to that of the appellants, given by the said Thomas Cook. There was also an execution against Thomas Cook, in favor of one Herbert, prior to that of the appellants. The appellee also read a letter from appellant, John Black, to him, dated August 17, 1819, directing him to stay all proceedings on their execution, till further orders.

" It further appeared in evidence, that the execution of Van Mater was in the hands of Charles Parker, Esq., late sheriff, and to satisfy which the defendant elected to have his real estate sold; that the personal estate of the said Thomas Cook was sold under Herbert's and one Gordon's executions, and the proceeds were applied to pay off said Herbert's and Gordon's executions, Gordon having, also, an *alias*, and taking some property that Herbert's did not bind; that the execution of the appellants was delivered to appellee, as sheriff, and they had an idea, that under their execution they could come in for the personal estate, and wished to raise something for the costs from that source, but were told by the under-sheriff of appellee, that they could get no more from their execution than the land covered by their mortgage, as the personal property must be applied to Herbert's and Gordon's executions. Charles Parker advertised the mortgaged premises for sale, under Van Mater's execution, in October, 1819, and appellee advertised the same for sale under the executions of Herbert and Gordon, at the same time, and attended at the time and place of sale; that he was prevented from advertising and selling on the appellants' execution in consequence of the letter of John Black, herein before stated; that the sums due upon Hampton's mortgage and the mortgage of the appellants, at the time of the sale, amounted to about $7,000; that the equity of redemption in the mortgaged premises was sold by sheriff Parker, by virtue of Van Mater's execution, for six cents per acre, subject to the mortgages of Hampton and the appellants, and bought by John Black, for himself and the other appellant;

Black et al. *v.* Ely.

that the proceeds of such sale were applied to pay off Van Mater's execution, and that a balance still remained due thereon; that the said mortgaged premises were worth the amount of the mortgages and the six cents per acre; and that the appellants have received and accepted a deed from Charles Parker, in pursuance of said sale.

"There was another farm belonging to Cook, advertised by Parker and appellee, sheriffs, and was bid to more than Van Mater's execution, and was adjourned by the sheriff on Herbert's bid, at request of appellants, for the purpose of selling the equity of redemption of Cook in the mortgaged premises, by virtue of the previous executions, which was advertised for sale at the same time and place. It was afterwards sold for more than the adjourned bid, and for more than the balance on Van Mater's execution, and the balance paid to Ely."

The court affirmed the judgment of the justice, whereupon the Blacks brought this *certiorari.*

And now *Wood* and *Wall,* for the plaintiffs in *certiorari,* contended, that the plaintiff was not entitled to centage upon the execution of $4,691 in favor of the Blacks. The words of the statute were, that sheriff should have centage "on every dollar, to be computed on the amount of the debt or damages paid, or secured to be paid, to the plaintiff by sale or otherwise." *Pat. N. J. Laws* 424. Here the sheriff had not paid or secured any money to the plaintiffs, for they obtained, and were entitled to, the land by virtue of the pre-existing mortgage, and not by virtue of the sale on the execution.

2. If he was entitled to centage at all upon the execution, he could have it only on the value of the property levied on, if the property was not sold, and the amount of the sale if the property was sold, and was not entitled to centage on the whole amount of the execution, if it exceeded the value of the property levied on.

3. That in this case, the property levied on was only the equity of redemption of Cook, for Cook had no other right in the land, the mortgage having the legal estate; and that, therefore, the sheriff's fees must be calculated only upon the value of the equity of redemption, *viz :* what it brought at the sale, and not upon the value of the whole mortgaged premises or absolute fee.

4. That the letter from Black to the sheriff, telling him not to sell, could not vary the case, for if the sheriff had gone on and sold, he could only have sold the interest of Cook in the premises, *viz :* the equity of redemption, and, therefore, before the sheriff could derive any benefit from the letter, he ought to have shewn, that if he had been permitted to have gone on and sold under Black's execution, he could have raised the whole amount of the judgment.

5. That the purchase of the equity of redemption was not an extinguishment of the debt.

*Southard* and *R. Stockton* contended, that by the purchase of the equity of redemption by the Blacks they had received satisfaction for their debt; that it was the same, substantially, as if the money had been paid to them, and, therefore, as the money due on the execution had been substantially "paid or secured to them" the sheriff was entitled to his fees on the whole amount of the judgment.

2. When the sheriff levies on property, he has a right to centage on all moneys received on the execution, no matter whether the money is made by his own act, or the plaintiff himself interferes and makes the money; for the plaintiff, by coming in and receiving the money, could not defeat the sheriff of his fees.

3. That the sheriff was entitled to fees, not merely upon the value of the equity of redemption, but of the whole mortgaged premises; for that the mortgagor, as to every other purpose but securing the payment of the money to the mortgagee, had the legal estate. It was so decided in the

Gibbons *v.* Livingston.

Court of Errors in the case of *Montgomery* v. *Bruere.* Therefore, when a sheriff levies upon mortgaged premises, he levies upon the fee; and the person purchasing buys the fee, consequently the fees must be calculated upon the value of the mortgaged premises, and not on the value of the equity of redemption only.

*Curia advisare vult.* At a subsequent day, the court, without delivering any opinion, reversed the judgment.

THOMAS GIBBONS *against* JOHN R. LIVINGSTON.

1. Under the act of the 25th of February, 1821, entitled "A further supplement to the act entitled, 'An act to preserve and support the jurisdiction of the State,'" a citizen of this State, who has been restrained by an injunction out of the Court of Chancery of New York from navigating with his steamboat the waters between the ancient shores of the States of New Jersey and New York, may recover damages, with triple costs, against the person so restraining him.

2. Although the enjoining and restraining was, by virtue of an injunction, sued out and served before the passing of the act, and although the defendant did no act or thing, after the passing of the act, to enforce the injunction, yet his suffering it to remain in force after the passing of the act, and not dissolving it, was such a restraining and enjoining as to bring him within the words of the act.

3. The injunction issued by virtue or under color of the laws of New York, because it is those laws which create the right upon which the power of issuing the injunction was exercised.

4. *Query.* Can a citizen of the State of New York, acting within that State, and under its judicial authority, be called in question for such act in another State? As a general rule he cannot. But it appears in this case he may.

This was an action of trespass on the case, brought by Gibbons against Livingstone, under the statute passed 25th of February, 1820, (*Rev. Laws* 689) entitled "A further supplement to the act entitled an act to preserve and sup-